UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

United States Courts
Southern District of Texas
FILED

MAR 1 2 2007

Michael N. Milby, Clerk of Court

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ADEN RUSFELDT and<br>RUSFELDT INVESTMENTS LLP<br>d/b/a Currency Trading Made Easy,<br><br>Defendants. | Civil Action No.<br>G 07-130<br><br>COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF AND FOR CIVIL PENALTIES UNDER THE COMMODITY EXCHANGE ACT, AS AMENDED, 7 U.S.C. §§ 1, *et seq.* |

## I.
## SUMMARY

1. This is a civil action brought by Plaintiff Commodity Futures Trading Commission ("Commission"), an independent regulatory agency of the United States, to enforce claims brought under the Commodity Exchange Act ("Act"), 7 U.S.C. § 1 *et seq.* (2002), and the Commission's Regulations ("Regulations"), 17 C.F.R. § 1 *et seq.* (2006).

2. Since at least October 2005 to the present ("the relevant time"), defendants Aden Rusfeldt and Rusfeldt Investments LLP, doing business as "Currency Trading Made Easy," have used an Internet website to fraudulently solicit retail customers to engage in speculative trading of foreign currency ("forex") futures contracts through trading accounts managed by the defendants and to purchase a forex futures contracts trading training course. The defendants, through their website, made misrepresentations of fact regarding such material facts as the profit potential and risk of loss in trading forex futures contracts, the profitability of Rusfeldt's own trading and the performance record of accounts managed by Rusfeldt. The defendants also misrepresented or failed to disclose material facts concerning, among other things, the

1

performance record of their own trading and the accounts managed by them, as well as their compensation for trading the accounts.

3. By reason of his conduct, defendant Rusfeldt is directly liable for violations of Section 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. § 6b(a)(2)(i) and (iii) (2002), and Commission Regulation 1.1(b)(1) and (3), 17 C.F.R § 1.1(b)(1) and (3) (2006), by cheating or defrauding or attempting to cheat or defraud customers or prospective customers in the managed account program and willfully deceiving or attempting to deceive customers or prospective customers. Defendant Rusfeldt Investments LLP is liable for Rusfeldt's violations pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2002).

4. Each fraudulent or misleading representation or omission of material fact and each scheme, transaction or practice or course of business that operated as a fraud or deceit employed by the defendants, including those specifically alleged herein, are alleged as separate and distinct violations of Section 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. § 6b(a)(2)(i) and (iii) (2002), and Commission Regulation 1.1(b)(1) and (3), 17 C.F.R §§ 1.1(b)(1) and (3) (2006).

5. Accordingly, the Commission brings this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2002), to enjoin the defendants' unlawful acts and practices and to compel their compliance with the Act and Regulations thereunder. The Commission also seeks an order barring Rusfeldt and Rusfeldt Investments LLP from engaging in any commodity-related activity, including soliciting new customers or customers' funds. In addition, the Commission seeks the entry of an order requiring the defendants to pay civil monetary penalties under the Act, to be assessed by the Court, in amounts of not more than the higher of $130,000 for violations thereafter, or triple the monetary gain to the defendants for each violation of the Act and Regulations described herein, disgorgement of defendants' ill-gotten gains, restitution to

customers, prejudgment interest and such other relief as this Court may deem necessary and appropriate.

6. Unless restrained and enjoined by this Court, the defendants are likely to continue to engage in the acts and practices alleged in this Complaint and similar acts and practices, as more fully described herein.

## II.
## JURISDICTION AND VENUE

7. Section 2(c)(2)(B)(i) and (ii) of the Act provides that the Commission shall have jurisdiction over an agreement, contract or transaction in foreign currency that is a contract of sale of a commodity for future delivery (or option on such a contract) or an option, so long as the contract is "offered to, or entered into with, a person that is not an eligible contract participant," and "the counterparty, or the person offering to be the counterparty," is not one of the regulated entities enumerated in Section 2(c)(2)(B)(ii)(I-VI).

8. Section 2(c)(2)(B)(ii)(I-VI) of the Act identifies regulated entities that are exempted counterparties to foreign currency transactions with retail customers, which include, as set forth in subclause (II), futures commission merchants ("FCMs") and, as set forth in subclause (III), certain statutorily defined affiliates of FCMs, which encompasses only those "affiliated" persons as to whom the FCMs are required under the Act and Commission Regulations to make and keep records.

9. Notwithstanding subclauses (II) and (III) of subparagraph (B)(ii), Section 2(c)(2)(C) of the Act provides that agreements, contracts, or transactions in retail foreign currency described in subparagraph (B) are subject to Sections 4b (antifraud provision) and 4c(b) of the Act if they are entered into by a FCM or an affiliate of a FCM, which is not also an entity described elsewhere in subparagraph (B)(ii)(I-VI).

3

10. From July through December 2005, the counterparty to the retail forex transactions entered into by some of the defendants' customers was Forex Capital Markets LLC ("FXCM"). During that time, FXCM was a FCM registered with the Commission.

11. From October 2005 through May 2006, the counterparty to the retail forex transactions entered into by some of the defendants' customers was COESfx Clearing Inc. ("COESfx"). During that time, COESfx was a FCM registered with the Commission.

12. From January through at least June 2006, the counterparty to the retail forex transactions entered into by some of the defendants' customers was Gain Capital Inc. ("Gain Capital"). During that time, Gain Capital was an affiliate of an FCM registered with the Commission, Gain Capital Group LLC.

13. Recently, the defendants have managed their customers' forex trading accounts at Nations Investments LLC and Forex Investments International Inc., both registered FCMs.

14. The Act anticipates that wealthy or institutional investors – known as "eligible contract participants" – that meet certain financial criteria and that trade foreign currency futures or options contracts have sufficient resources to protect their own interests when entering into foreign currency transactions, and therefore their transactions fall outside the Commission's jurisdiction. The Act further contemplates that the forex futures or options transactions of investors who do not meet the financial criteria to be eligible contract participants (and who are referred to herein as "retail customers") shall fall within the Commission's jurisdiction.

15. Section 1a(12)(A)(xi) of the Act defines an eligible contract participant as an individual who has total assets in excess of: (a) $10 million; or (b) $5 million and who enters the transaction to manage the risk associated with an asset owned or a liability incurred, or reasonably likely to be owned or incurred.

16. All of the foreign currency transactions alleged herein were agreements, contracts or transactions in foreign currency that are a sale of a commodity for future delivery ("futures contracts").

17. All of the foreign currency transactions alleged herein were offered to or entered into with persons who did not qualify as eligible contract participants, meaning that the defendants' customers were retail customers whose transactions are contemplated by Section 2(c)(2)(C) of the Act to be within the Commission's jurisdiction.

18. Accordingly, the Commission has jurisdiction over this action.

### III.
### THE PARTIES

19. Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency that is charged with responsibility for administering and enforcing the provisions of the Act, 7 U.S.C. §§ 1 *et seq.* (2002), and the Regulations promulgated thereunder, 17 C.F.R. §§ 1 *et seq.* (2006). The Commission maintains its principal office at Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

20. Defendant **Aden L. Rusfeldt** is an individual who resides at 311 Hughes Rd., Dickinson, TX 77539. Rusfeldt has never been registered with the Commission in any capacity. On or about August 31, 2006, Rusfeldt applied to the National Futures Association ("NFA") for registration as an associated person and principal of Rusfeldt Investments LLP. Rusfeldt withdrew the application on November 29, 2006. Rusfeldt is the owner of Rusfeldt Investments LLP and the only authorized trader on its trading accounts. Rusfeldt is a controlling person of Rusfeldt Investments LLP.

21. Defendant **Rusfeldt Investments LLP** is a business entity created in the state of Texas and whose primary business address is 1100 NASA Rd. 1, Suite 310-D, Houston, TX

77058. Rusfeldt Investments LLP has never been registered with the Commission in any capacity. On or about August 31, 2006, Rusfeldt Investments LLP applied to the NFA for registration as a commodity trading advisor and as an introducing broker. Rusfeldt Investments withdrew the application on November 29, 2006.

## IV.
## FACTS

22. Since at least October 2005, Rusfeldt and Rusfeldt Investments LLP have been doing business as "Currency Trading Made Easy" ("CTME"). CTME has never been registered with the Commission in any capacity.

### A. <u>Solicitation Of Customers Through an Internet Website</u>

23. On or about January 24, 2005, Rusfeldt registered the Internet domain name www.easytrading.biz ("easytrading.biz") through Go Daddy Software Inc.

24. From at least October 2005 through the present via easytrading.biz, the defendants have offered to the general public managed trading of forex investments of $10,000 or greater through trading accounts at a FCM or an affiliate of a FCM.

25. From at least October 2005 through the present via easytrading.biz, the defendants have also offered for sale to the general public a foreign currency trading training course, which purportedly teaches the same strategies used by Rusfeldt in his trading of managed accounts.

26. In the website, prospective clients have been directed to open a trading account via links that redirect the viewer to the website of one of the firms at which Rusfeldt traded. In addition to customer account agreements available in pdf format, prospective clients are provided with a "Discretionary Trading Authorization/ Power of Attorney" form (POA). Prospective clients are advised to complete the POA and fax it to the defendants.

B.   **The Defendants' Fraudulent Solicitations**

27.   From at least October 2005 through the present via the Internet website www.easytrading.biz, the defendants have offered a training course through which the defendants will purportedly teach customers how to profitably trade forex.

28.   For example, the CTME website, which claims to have "the answer to trading Forex successfully," states that Rusfeldt will "teach you how to trade systematically with a simple 2 out of 5 technique approach that will make you profitable 70% of the time." After describing $757 million in profits purportedly made by Bank of America on foreign currency trading in the year 2004, easytrading.biz claims that Rusfeldt will "teach you how to ride the coat tails of the big banks and commercial traders to pull daily profits from the market like clockwork."

29.   Under the subtitle "Why Currency Trading Made Easy?," the website repeats that "[CTME] is a course that will teach you how to trade the way the banks do with a 70% success rate," adding that "[w]ith proper money management (which I will also teach you) that can add to a fortune very quickly. There are 5 basic signals that must be met for a trade to qualify and if you follow the signals you will be astounded at how accurate your trading will be."

30.   On another page, under the subtitle "How can I make money through Forex?," the website states "[CTME] offers a training program to guide you through the steps of making money. You can learn to trade currencies, part or full time, with the goal of exceeding your present income in a very short time. Trading an average of two hours a day can earn as much as $2,000 to $100,000 per month, if executed properly."

31.   Other representations in the easytrading.biz website emphasize a high profit potential. The following statements, among other, appear in the website:

7

- "Typical traders catch only 3 to 4 really great trades a week. With my system the timeframe is closer to 3-4 great trades per day."

- Unlimited income potential... *Take the vacations you've always wanted, drive what you want to drive and live where you want to live.*"

- "I teach you to follow 2 out of 5 signals before entering any trade. Doing that will make you 70% successful (which will make you very wealthy if you follow proper money management). I will teach you when to enter, when to take profits, when to exit losing trades and how to make money while you sleep."

- "[T]his is the only currency trading course that is reasonably priced and that teaches you to trade the way the banks trade with over a 70% success rate."

- "Over a 100% yearly rate of returns are already happening on 8 of the automated systems. But even higher rates of return are possible trading manually once you master the system."

- "I make and keep it simple, yes it will take a few weeks but once you've got it you'll be making money."

- "If you want to be successful in something then learn from somebody who already is."

- "If I was looking to make some serious money I'd skip 10 car tune ups and dinners to get my hands on this kind of information."

At no time does Rusfeldt disclose his or Rusfeldt Investment LLP's actual performance record.

32. As a bonus for "acting right away," Rusfeldt offers in the easytrading.biz website "3 specific trades that are 90% winners that happen almost every day. These are easy to learn trades that are worth 50 times the price of the course. *Once learned it is like a money tree*

8

*planted in your yard that produces hundred dollar bills each day.*" (emphasis added). In a footnote, he adds that "[t]his information is so powerful and accurate that I don't want to have to support too many people with it. That is why I am limiting this part of the offer to the next 60 clients."

33. The easytrading.biz website downplays the risk of loss in trading forex. For example, a paragraph on one page reads "Have you ever met a banker that was not conservative? Me either, because banks are conservative by nature. Banks love the Forex because it is the best trending market in the world. It keeps the same up or down direction 80% of the time. This makes trending markets the easiest markets to trade."

34. Other representations in the easytrading.biz website include:

- "I teach only five simple indicators… Only two are required to line up for you to have a high percentage of winning trade [sic], but the more you have, the more rock solid your trade becomes. *Quick learning curve. Easy for you to spot winning trades. Easy to know when to exit and when to enter…*"

- Forex market is the most liquid market in the world. *Always get the price you want.*

- Learn how to make a minimum of 20 pips/ticks a day. *Doing this while trading on a 5% margin (safe money management) will double your money every five months.*

These passages represent that Rusfeldt's strategies are easily learned and employed and will more likely than not result in winning trades rather than losses.

35. The easytrading.biz website contains a generic risk disclaimer as a footer to some pages, but it is posted in a grey font on a slightly lighter grey background at the bottom of a page

9

in the middle of the website. Additionally, within other generic "risk disclosures," the defendants impart the message that the risk occurs when a client fails to follow the strategies taught by Rusfeldt. For example, the websites state "Currency Trading is NOT A GET RICH OVER NIGHT MONEY MAKING SCHEME! The **amounts** stated in the ads, letters or website are to be construed as **average examples** of possible amounts which can be made. Depending on your mental acuity, skills and ability, you can make more or less than the stated amounts. **Currency Trading Made Easy** is risky, especially **if you don't follow the simple instructions in the User Guide, or the money management I recommend in the manual**..." (emphasis in original). This language implies that the defendants' strategies, as employed by Rusfeldt, do not carry a high risk of loss and that the only variable is the amount customers will profit, not whether they will generate a profit.

36. Since at least October 2005, the CTME website has also offered managed account trading by Rusfeldt, who purportedly uses a "low risk forex trading discipline." The website generally conveys the message that managed account clients and training course students are likely to earn large and consistent profits trading forex contracts. The website explicitly states that Rusfeldt uses the same trading strategies for his own account as for the managed accounts and represent that Rusfeldt's trading in both is consistently successful. For example, it states "I trade the same strategies as in my course and daily analysis. I am extra conservative on my managed account. I trade on a 2-3% margin with 100 to 1 leverage. I average 5-10% per month." Under the heading "Three Reasons to Believe What I Say," the website states in part "I am a full time currency trader. I practice what I preach. I'm a currency trader first and a teacher second... If you would rather have someone that mentors and teaches and is not successfully in the markets then I recommend one of those $2,000 or $3,000 mentoring programs."

37. In the CTME website, in a section about managed trading accounts, the defendants stated that "I charge 25% of net new profits per month. I only get paid if you make new money...." However, the website failed to disclose that, pursuant to an introducing agreement, the defendants earn commissions on each lot traded in accounts introduced by them to an FCM or affiliate of an FCM.

38. Between July and December 2005, Rusfeldt traded in 198 customer accounts opened with FXCM via two PAMM accounts, referred to as the "100K" and the "Rapid." None of the accounts managed by Rusfeldt earned the type of returns described in the CTME website. Rather, the vast majority of Rusfeldt's trading resulted in losses. Rusfeldt's trading earned a profit of $7,431.54 in July 2005 in the 100K account and $2,697.44 in November 2005 in the Rapid account. However, in every other month, Rusfeldt's trading sustained losses ranging from $30,142.74 to $668,598.18. For the period of July through December 2005, total losses in the 100K account equaled $807,388.05 and total losses in the Rapid account equaled $665,900.74.

39. From February through December 2005, Rusfeldt traded mini-contracts in his own personal trading account at FXCM. Rusfeldt traded this account separately from the managed accounts. Rusfeldt earned a profit of $224.41, $9.21 in May 2005 and $16,310.17 in November 2005. He conducted no trading in September 2005. In each of the remaining months, his trading sustained losses ranging from $124.94 and $12,886.20. Rusfeldt closed his account, on December 10, 2005, with a net profit of $1,182.70.

40. From October 2005 through May 2006, Rusfeldt traded a total of 14 individual accounts at COESfx. While Rusfeldt made profits in three of the eight months, Rusfeldt's trading resulted in trading losses of $105,015.97, not including fees and commissions that were also charged to customers.

41. At Gain Capital, Rusfeldt traded through three master accounts linked to individual customer accounts and in his own personal account. Master 1, which was linked to 46 individual sub-accounts, had an overall loss of $319,584.63 from January 4, 2006 through June 15, 2006. While the months of February, April and June 2006 saw profits of $10,010.86, $18,920 and $6,920 respectively, the month of January 2006 alone saw a staggering loss of over $333,000. In March and May 2006, the account had losses of $2,801.18 and $19,300.00 Master 2, which was linked to 14 individual sub-accounts, had an overall loss of $12,153 from March 24 through June 16, 2006. In April and June 2006, Rusfeldt's trading sustained losses of approximately $20,000 per month. Master 3, which was linked to only 3 individual sub-accounts, had an overall profit of $3,570 from April 3 through 21, 2006.

42. Rusfeldt's individual trading account at Gain Capital sustained a loss of $320 in trading from January 11 through February 15, 2006.

43. On February 8, 2005, the defendants and FXCM entered into an Introducer Agreement, in which FXCM agreed to pay the defendants a commission rebate on each closed lot in accounts of clients introduced to FXCM by the defendants. From July through December 2005, the defendants introduced 198 managed accounts to FXCM, into which nearly $3.5 million in customer funds was deposited. FXCM paid the defendants over $260,000 in commission rebates.

44. On October 12, 2005, Rusfeldt Investments entered into an agreement with COESfx which provided that Rusfeldt Investments would receive a rebate for "each Unit (100,000 Base Currency) traded on the COESfx Platform" by any customer introduced by Rusfeldt Investments. The amount of the rebate varied from $1.00 to $4.00 based on the total

volume traded by Rusfeldt. From October 12, 2005 through May 26, 2006, COESfx paid the defendants over $25,500 in commission rebates.

45. The defendants entered into a similar introducing agreement with Gain Capital in January 2006. The agreement with Gain Capital provided that Rusfeldt Investments would receive "USD 1 pip round trip base currency unit transaction" executed by customers introduced by Rusfeldt Investments. From January through June 2006, Gain Capital paid the defendants $41,997 in commission rebates.

46. During the relevant time, the defendants also collected funds from purchasers of the forex trading course.

47. The representations made by the defendants in the CTME website regarding the profit potential and risk of loss in the trading of forex contracts, the performance of the accounts managed by them and the compensation to be received by them were false and misleading. Rusfeldt was responsible for the content of the CTME website and knew the representations in it were false because he traded accounts for Rusfeldt Investments LLP d/b/a CTME and he himself signed the introducing broker agreements with FXCM, COESfx and Gain Capital.

## V.
## VIOLATIONS OF THE COMMODITY EXCHANGE ACT AND COMMMISSION REGULATIONS

### COUNT:

**Violations of Section 4b(a)(2)(i) and (iii) of the Act and Section 1.1(b)(1) and (3) of Commission Regulations: Fraud and Deceit in the Solicitation of the Sale of Futures Contracts**

48. Paragraphs 1 through 47 are realleged and incorporated herein by reference.

49. By engaging in the foregoing fraudulent acts and practices alleged in this Complaint, the Defendant Rusfeldt, in or in connection with orders to make, or the making of,

contracts of sale of commodities for future delivery, made or to be made, for or on behalf of any other persons, where such contracts for future delivery were or could be used for the purposes set forth in Section 4b(a)(2) of the Act, 7 U.S.C. § 6b(a)(2) (2002), has: (a) cheated or defrauded or attempted to cheat or defraud other persons; and (b) willfully deceived or attempted to deceive other persons, all in violation of Section 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. § 6b(a)(2)(i) and (iii) (2002), and Commission Regulation 1.1(b)(1) and (3), 17 C.F.R. § 1.1(b)(1) and (3) (2006).

50. Pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2, and Section 1.2 of the Regulations, 17 C.F.R. § 1.2, Rusfeldt Investments LLP is liable for any violations of Section 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. § 6b(a)(2)(i) and (iii) (2002), and Commission Regulation 1.1(b)(1) and (3), 17 C.F.R. § 1.1(b)(1) and (3) (2006), by its officers, directors, managers, employees, and agents, in that all such violations were within the scope of their office or employment with Rusfledt Investments LLP.

51. At all times during the relevant period, Rusfeldt was the controlling person of Rusfeldt Investments and he is therefore liable for Rusfeldt Investment's violations of Section 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. § 6b(a)(2)(i) and (iii) (2002), and Commission Regulation 1.1(b)(1) and (3), 17 C.F.R. § 1.1(b)(1) and (3) (2006), pursuant to Section 13(b) of the Act.

52. Each fraudulent misrepresentation made during the relevant period, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. § 6b(a)(2)(i) and (iii) (2002), and Commission Regulation 1.1(b)(1) and (3), 17 C.F.R. § 1.1(b)(1) and (3) (2006).

## VI.
## RELIEF REQUESTED

Wherefore, the Commission respectfully requests that this Court, as authorized by § 6c of the Act, 7 U.S.C. § 13a-1 (2002), and pursuant to its own equitable powers:

A. Enter an order finding that the Defendants violated Section 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. § 6b(a)(2)(i) and (iii) (2002), and Commission Regulation 1.1(b)(1) and (3), 17 C.F.R. § 1.1(b)(1) and (3) (2006);

B. Enter a permanent injunction prohibiting the Defendants and any other person or entity associated with them, or any successor thereof, from engaging in conduct violative of the provisions of the Act as alleged in this Complaint, and from engaging in any activity relating to commodity interest trading, including but not limited to, soliciting, accepting or receiving funds, revenue or other property from any person, giving advice for compensation, or soliciting prospective customers, related to the purchase and sale of any commodity futures contracts;

C. Enter an order directing the Defendants and any successors thereof, to disgorge, pursuant to such procedure as the Court may order, all benefits received from the acts or practices which constituted violations of the Act, as described herein, and interest thereon from the date of such violations;

D. Enter an order directing the Defendants to make full restitution to every customer whose funds were invested as a result of acts and practices which constituted violations of the Act, as described herein, and interest thereon from the date of such violations;

E. Enter an order requiring the Defendants to pay civil monetary penalties under the Act, to be assessed by the Court, in amounts of not more than the higher of $130,000.00 for each violation, or triple the monetary gain, to defendant for each violation of the Act and Regulations described herein;

F. Enter an order requiring Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2), and to pay pre-judgment and post-judgment interest; and

G. Enter an order for such other and further remedial ancillary relief as the Court may deem necessary and appropriate under the circumstances.

Dated: March 12, 2007

Respectfully submitted,

ATTORNEYS FOR PLAINTIFF
COMMODITY FUTURES TRADING
COMMISSION

*Christine M Ryall*

Christine Ryall (*pro hac vice*), Attorney in Charge (Fla. Bar 0983550)
Eugene Smith (*pro hac vice*) (Md. Bar)
Commodity Futures Trading Commission
Division of Enforcement
1155 21st Street, N.W.
Washington, D.C. 20581
(202) 418-5318 / cryall@cftc.gov
(202) 418-5371 / esmith@cftc.gov
(202) 418-5523 (facsimile)

# CIVIL COVER SHEET

JS 44 (Rev. 11/04)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Commodity Futures Trading Commission

**DEFENDANTS**
Aden Rusfeldt and Rusfeldt Investments LLP d/b/a Currency Trading Made Easy

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  Galveston
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED

(c) Attorney's (Firm Name, Address, and Telephone Number)
Christine M. Ryall, CFTC Division of Enforcement, 1155 21st St. NW, Washington, DC 20581, (202) 418-5318

Attorneys (If Known)   G 07-130

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☒ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

*PERSONAL INJURY*
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

*PERSONAL INJURY*
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

*PERSONAL PROPERTY*
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
  Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☒ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
7 USC 196b(a)(2)

Brief description of cause:
Violation of the Commodity Exchange Act and CFTC Regulations.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ Civil mon. penals Injunction, restitution, disgorgement,

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____  DOCKET NUMBER _____

DATE  March 12, 2007
SIGNATURE OF ATTORNEY OF RECORD  Christine M Ryall

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I. **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V. **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.